1

Richard W. Pierce, Law Office
2  P.O. Box 503514
Saipan, MP 96950-3514
3  Telephone:  (670) 235-3425
Facsimile:   (670) 235-3427
4
Attorney for Defendant Masayuki Isoda

F I L E D
Clerk
District Court

OCT 1 4 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

5

6

7               IN THE UNITED STATES DISTRICT COURT
FOR THE
8         COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

9

10

11  PEDRO R. DELEON GUERRERO,        )
)          Civil Action No. 04-0033
          Plaintiff,            )
12                                  )
                                   )
      vs.                        )    **MEMORANDUM IN SUPPORT OF**
13                                  )      **MOTION FOR SUMMARY**
MASAYUKI ISODA, aka,             )         **JUDGMENT**
14                                  )
MIKE ISODA,                      )
                                   )  Date:   November 10, 2005
15           Defendant.           )  Time:   9:00 a.m.
                                   )  Judge:  Munson
16  ───────────────────────────────

17

     Masayuki Isoda requests that this Court grant him summary judgment.  The
18
undisputed evidence shows that he did not breach his lease agreement with Pedro R.
19
Deleon Guerrero, and he did not abandon the lease.[1]
20

21  ────────────────
[1]
22
     Summary judgment is appropriate if there is no genuine issue as to any
23       material fact and the moving party is therefore entitled to judgment as a
         matter of law. See Fed. R. Civ. Proc. 56(c). The moving party bears the
24       initial burden of establishing that there is no genuine issue of material fact.
         See id.; Celotex Corp. v. Catrett, 477 U.S. 3 17, 322 (1 986). On those
25       issues for which it bears the burden of proof, the moving party must make
         a showing that is "'sufficient for the court to hold that no reasonable trier
26       of fact could find other than for the moving party.'" Calderone v. United
         States, 799 F.2d 254,259 (6th Cir.1986). See Idema v. Dreamworks, Inc.,
27       162 F.Supp.2d 1162,1141 (C.D.Cal. 200 1). If the moving party does not
         bear the burden of proof at trial, the initial burden of showing that no
28       genuine issue of material fact remains may be discharged by

-1-

## I. STATEMENT OF THE MATERIAL FACTS AND THE PROCEEDING

This is a simple case. In a 1991 settlement of two cases in this Court, Guerrero had two options: 1) pay Isoda $350,000.00 within 90 days of settlement, or 2) lease Isoda land in Garapan, known as Lots No. 001 D 51 and 001 D 52. Guerrero did not pay the required sum, and he duly executed the 55-year lease to Isoda.

The lease is attached as Exhibit A to the Statement of Undisputed Facts (hereinafter "Facts"), filed this date. The lease incorporates the settlement agreement. Lease, ¶ 5. The settlement agreement is Exhibit B to the Facts.

The settlement agreement contains one term material to this dispute. As stated, Guerrero had 90 days to pay Isoda $350,000.00. If he failed to do so, which he did, Guerrero had to lease the Garapan lots to Isoda for a term of 55-years. Settlement, ¶ 4; Facts, ¶ 5   The settlement further provides:

> ISODA will then sublease or assign the lease to said Garapan properties, and upon this occurrence, ISODA shall pay to GUERRERO from the gross proceeds of said sublease or assignment of lease thirty—three and one third percent (33 1/3%) of said amount. The sublease or assignment shall be for not less than the fair market value of said Garapan properties as determined by an appraisal conducted by an appraiser qualified to conduct real property appraisals in the Commonwealth. In the event the parties are unable to agree on an appraiser then GUERRERO and ISODA shall each select an appraiser and the fair market value shall be the mean of the two appraisals.

Settlement, ¶ 4.

The settlement is silent as to who, if anyone, has a duty to seek and obtain a sublessor or assignor for the Garapan lots.

---

demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

*Chung v. World Corp*., CV 04-0001-ARM, slip op. at 2 (June 22, 2005, D.N.M.I.)

1

2    There is no dispute that neither Guerrero nor Isoda ever found a buyer for the lots.

3    The only concrete proposal came recently for $120,000.00.   Guerrero rejected that

4    proposal, referenced to him as $125,000.  Isoda was willing to accept it.  Facts, ¶ 7.  Isoda

5    cannot assign or sublet the lease without Guerrero's permission.  Lease, ¶ 16.

6    It is undisputed that Guerrero and Isoda did not retain an appraiser or three

7    appraisers to appraise the fair market value of the lots. Facts, ¶ 8.

8    It is also undisputed that Isoda ceased to clean the lots around seven or eight years

9    ago when he no longer had employees to do the job.  Fact, ¶ 11.

10

11   On May 10, 2004, Guerrero sent Isoda a letter asserting that Isoda had abandoned

12   the property and gave him 60 days to cure the abandonment.  Guerrero said he had heard

13   nothing from Isoda and that the property had become overgrown with vegetation and

14   trash had been deposited. He wrote that he had the property cleaned.  Facts, ¶ 3 (Ex. C.).

15   Isoda responded that he had no intention of abandoning the property and that he

16   was under negotiation for a new development.  Facts, ¶ 4 (Ex. D).

17

18   The complaint followed.  In his complaint, Guerrero complains that Isoda did not

19   sublet or assign the lease, did not improve it, and did not maintain the premises in an

20   attractive and healthy manner.  He claims that this behaviour constitutes either a breach

21   or an abandonment of the lease.  *See* Complaint, ¶¶ 7 and 8.

22   Isoda denied the allegations and counterclaimed for attorney fees and costs under

23   the agreement.  *See* Answer; Lease, ¶ 30.

24   /

25   /

26

27

28

-3-

1

2

## II. ISODA HAS NOT BREACHED THE LEASE

3
Fundamentally, a party to a contract cannot breach the contract unless the party

4
fails to perform a contractual duty. *See Rosario v. Camacho*, 2001 MP 3 ¶ 95 ("Breach

5
of contract occurs upon the non-performance of a contractual duty of immediate

6
performance") (citation omitted).[2]  In order to determine Isoda's duties under the lease,

7
we have to review the lease terms and compare the terms against the claims.

8
The lease agreement is integrated in accordance with its specific term.[3]  *See*

9

10
Lease, ¶ 29.  Under CNMI law, the interpretation of an integrated agreement is confined

11
to the "four corners,"[4] and the interpretation is a question of law.  *Riley v. Public School*

12
*System*, 4 N.M.I. 85, 88 (1994) (the intent of contracting parties is generally presumed to

13
be encompassed by the plain language of contract terms; the language need only be given

14
legal effect, or construed by the court and may be disposed of by summary judgment)

15
(citations omitted).

16

17

18

19

20
[2]    As the jurisdiction of this Court is based upon diversity, the substantive law of the Commonwealth of the Northern Mariana Islands is applied.

21
[3]    *Rosario v. Camacho*, 2001 MP 3, ¶ 72 ("An agreement is integrated unless other evidence establishes the writing did not constitute a final expression") (citation omitted).

22
*See Merci Corp. v. World Int'l Corp.*, 2005 MP 10, ¶ 17 ("The inclusion of an integration clause in a written document is strong evidence that the parties intended that document to

23
represent the entirety of their agreement").

24
[4]    "Since the Bill of Sale was an integrated document, there was no reason to go

25
outside the four corners to look at the intent of the parties." *Seol v. Saipan Honeymoon Corp.*, 1999 MP 9, 5 N.M.I. 238, ___ (1999).  A written lease is a contract, subject to the

26
same roles of construction as contracts. *Camacho v. L & T Int'l Corp.*, 4 N.M.I. 323, 325-26 (1996).

27

28

-4-

1
2
    Let us look at each of the contended breaches and compare them to the lease
3
terms: 1) Isoda did not sublet nor assign the lease, 2) Isoda did not improve the land, and
4
3) Isoda did not maintain the premises in an attractive and healthy manner.

5
    The last two are simple.  No term of the lease requires Isoda to improve the
6
premises or to keep the premises clean.  The lease specifically permits Isoda to use,
7
improve, or to develop the property.  Lease, ¶ 10.  He has the right to remove vegetation
8
and other materials, but he is not required to do so.  Lease, ¶ 11.  *See also* Lease, ¶ 12.1
9
(Isoda rights with respect to improvements).
10

11
    The third purported duty breach is that Isoda failed to assign or sublet the
12
property.  Any obligation on the topic must be found at the consideration and assignment
13
paragraphs of the lease because it is those paragraphs that reference the settlement
14
agreement.  *See* Lease, ¶¶ 5, 16.

15
    Paragraph 16 of the lease specifically incorporates paragraph 4 of the settlement
16
agreement, but Paragraph 16 does not, by its explicit terms, require Isoda to assign or to
17
sublet the premises.  Paragraph 16 gives Isoda the right to sublet or to assign, with the
18
permission of Guerrero, but it does not give him the duty to sublet or to assign.
19
Therefore, in order to find a duty to sublet or to assign, the Court must review the "terms
20
and conditions" of the settlement, which are the consideration for the Lease.  *See* Lease, ¶
21
5.[5]
22

23
    Consideration in a contract means the bargained for performance or returned
24
promise.  *Isla Financial Services v. Sablan*, 2001 MP 21, ¶ 14.  In the context of this
25
lease, the considerations to Guerrero would be the promises and performance of Isoda in
26

27
_____
[5]    The lease has other consideration from Isoda to Guerrero, such as Isoda's promise
28
to hold Guerrero harmless and to indemnify him.  Lease, ¶ 13.

the settlement agreement, plus other promises in the lease. Guerrero agrees that in this context of this lease, the "rent" has been fully paid. Facts, ¶ 9.

Isoda promised the following in the settlement: 1) dismissal of two lawsuits, 2) assumption of MTDC's liabilities, 3) payment of attorney fees to Guerrero's lawyer, 4) payment of a Guerrero Brothers loan with CDA, 5) removal of MTDC from premises in Tanapag, and 6) payment to Guerrero of one-third from the assignment or sublease of the Garapan lots. Settlement, ¶¶ 2, 3, 4, 5, 6, and 7. Isoda performed all promises, including the early payment of the fees to the Guerrero attorney, except for the one for which a condition of performance has not arisen. Facts, ¶ 10.

Recall, Guerrero had 90 days to pay Isoda $350,000.00, the agreed upon value of the 55-year lease for the settlement, according to Guerrero. Facts, ¶ 6. If Guerrero failed to make the payment, which he did, Guerrero had to lease the Garapan lot to Isoda for a term of 55-years. Settlement, ¶ 4. The settlement provides that upon:

> ISODA will then sublease or assign the lease to said Garapan properties, and upon this occurrence, ISODA shall pay to GUERRERO from the gross proceeds of said sublease or assignment of lease thirty—three and one third percent (33 1/3%) of said amount. The sublease or assignment shall be for not less than the fair market value of said Garapan properties as determined by an appraisal conducted by an appraiser qualified to conduct real property appraisals in the Commonwealth. In the event the parties are unable to agree on an appraiser then GUERRERO and ISODA shall each select an appraiser and the fair market value shall be the mean of the two appraisals.

Settlement, ¶ 4.

Thus, under the settlement, Isoda would only have a duty to assign or sublease if a ready and willing buyer offered to buy or accepted an offer to sell and if the price were not less than the fair market value as certified by an agreed appraiser or three appraisers.

1
2
3
4

Unless those conditions occurred, there could be no breach. *Rosario v. Camacho*, 2001 MP 3, ¶ 96 ("A condition is an event, not certain to occur, which must occur unless it is excused before performance under a contract becomes due").

5
6
7
8

It is undisputed that the conditions that would trigger Isoda's duty to assign or sublease did not occur. The parties never agreed upon an appraiser nor acknowledged a disagreement and utilized the three appraiser system, and no person ever offered to buy at a price acceptable to Guerrero and to Isoda.

9
10
11

Isoda anticipated that Guerrero will argue that Isoda has the duty to make the conditions occur. That is wrong for three reasons.

12
13
14
15
16
17
18
19
20
21

1.    The settlement is silent as to who, if anyone, has a duty to seek and obtain a sublessor or assignor for the Garapan lots. *Id.* at ¶ 97 ("The settlement agreement itself does not place the burden of finding a buyer or lessor on any particular party"). And, the Court should not impose a duty where none is clearly indicated nor contemplated by the contracting parties. *Id.* at ¶ 97. In the context of the settlement, where both Guerrero and Isoda would share in the proceeds from an assignment, it seems reasonable that both Guerrero and Isoda had the incentive to find a suitable buyer at a suitable price, but possessing the incentive does not impose a duty. Indeed, both Guerrero and Isoda have searched for buyers. *See* Facts, ¶ 7.

22
23
24
25

2.    The appraisal efforts were to be a joint undertaking of Guerrero and Isoda. If the appraisals were to be a joint undertaking, then the search for a buyer would be a joint undertaking.

26
27
28

3.    The assignment portion of the lease does not require Isoda to assign or sublet under any circumstances, which, facially and at first blush, conflicts with the term of the

1
2
3
4
5
6

settlement agreement. However, there is only a facial conflict. Isoda traded the right to receive $350,000.00 from Guerrero for the lease from Guerrero, which as Guerrero swore was the agreed value. If Isoda were to receive either $350,000.00 or the lease, it does not make sense that he should have to look for a buyer and sell it, and return one-third of the value to Guerrero.

7
8
9
10
11
12
13
14

Reasonably, the assignment paragraph of the lease can be completely reconciled with paragraph 4 of the settlement agreement by reading them together.[6]  If a willing buyer presented himself independently or through Guerrero's efforts and offered a price that triggered a good faith effort to engage in the appraisals process or a concurrence that the price was acceptable, Isoda would have to assign or sublet. In the meantime, Isoda could enjoy the fruits, if any, from the leased property to the exclusion of Guerrero, such as by developing his own business.

15
16
17
18
19
20

In conclusion, the law abhors a forfeiture of a lease. *Cabrera v. Young*, 2001 MP 19, ¶24 ("We agree with Appellants that forfeiture is not favored"). Guerrero's argument would cause forfeiture through a strained and unreasonable interpretation of the lease and the settlement agreement. Such an interpretation is not permitted. *See Thiem v. Thomas*, 119 N.H. 598, 604, 406 A.2d 115, 119 (N.H. 1979) ("This court will, where possible,

21
22

23
24
25
26
27

[6]   Where one writing references another instrument for additional contract terms, the two writings should be read together. *Forge v. Smith*, 458 Mich. 198, 207, 580 N.W.2d 876, 881 (Mich.1998). Also, "[w]hen interpreting contracts, we are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible." *CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.*, 381 F.3d 131, 137 (3rd 2004). "Only when two provisions are 'so radically repugnant that there is no way in which they can rationally stand together' will one provision be ignored or considered void." *Thiem v. Thomas*, 119 N.H. 598, 603, 406 A.2d 115, 118 (N.H. 1979) (citation omitted).

28

-8-

1  avoid construing a contract in a manner that leads to harsh and unreasonable results").

2  Isoda did not breach the lease, and the Court should grant him summary judgment.

3

4  ### III. ISODA DID NOT ABANDON THE LEASED PROPERTY

5      "An abandonment of the leased property by the tenant occurs when he vacates the

6  leased property without justification and without any present intention of returning and he

7  *defaults in the payment of the rent.*" RESTATEMENT (SECOND) OF PROPERTY, LAND. &

8  TEN. § 12.1, *comment i* (1977) (emphasis added).  Abandonment requires the intent to

9  abandon and conduct by which the intent is carried into effect.  *Turnway Corp. v. Soffer,*

10 461 Pa. 447, 460, 336 A.2d 871, 877 (Pa. 1975).  Lack of physical occupancy does not

11

12 mean the premises are not in the possession of the lessee, as long as the rent is paid.

13 *Smith v. Hegg,* 88 S.D. 29, 35, 214 N.W.2d 789, 793 (S.D. 1974).

14     As stated, Guerrero testified that the rent on the lease was fully paid.  Essentially,

15 Isoda paid the agreed rent of $350,000.00, in advance.  Otherwise, Isoda has complied

16 with the terms of the lease, and he has no contractual duty to improve or to occupy the

17

18 leased property.    In Isoda's letter of June 7, 2004, he stated that he had no intent to

19 abandon the property and that he was under negotiations for a new development.  *See*

20 Facts, ¶¶ 4 (Ex. D), 7. The tone of Isoda's letter is consistent with Isoda's alleged

21 statement to Guerrero at a chance meeting in a bar: "I may turn the property over to you,

22 the economy is very bad." Facts, ¶ 12.  Stating that he "may" turn over or abandon is a

23 far cry from actual abandonment.

24     Under the undisputed facts, no reasonable jury could find that Isoda had

25 abandoned the property.  If so, Isoda had 60 days to cure or a longer reasonable time to

26

27 cure after his receipt of the May 10, 2004, notice of default, and he responded that he had

28

no intent to abandon and was seeking development. Assertion of a leasehold interest negates any intent to abandon. *Turnway Corp. v. Soffer, supra,* 461 Pa. at 460, 336 A.2d at 877 ("appellee continually asserted a leasehold interest, even if under the wrong lease instrument. We are satisfied that there could not be an intention to abandon under those circumstances").

### IV. CONCLUSION

Based upon the foregoing, Isoda requests summary judgment in his favor on Plaintiff's claims. He also requests judgment in his favor on his counterclaim for attorney's fees and costs. *See* Lease, ¶ 30 (prevailing party entitled to costs and reasonable attorney's fees, to be fixed by the Court).

Respectfully submitted this October 14, 2005.

By:_____
RICHARD W. PIERCE
Attorney for Masayuki Isoda

-10-