**ORIGINAL**

FILED
Clerk
District Court

OCT 27 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

DOUGLAS F. CUSHNIE
P. O. BOX 949
SAIPAN, MP 96950
TELEPHONES: (670) 234/6843 • 234/6830
FAX: (670) 234/9723

Attorney for   **Plaintiff**

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| PEDRO R. DELEON GUERRERO, | ) | CIVIL ACTION NO.  04-0033 |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM IN** |
| | ) | **OPPOSITION TO** |
| MASAYUKI ISODA aka | ) | **DEFENDANT'S MOTION** |
| MIKE ISODA, | ) | **FOR SUMMARY JUDGMENT** |
| | ) | |
| **Defendant.** | ) | **TIME: 9:00 A.M.** |
| | ) | **DATE: NOVEMBER 10, 2005** |
| | ) | **JUDGE: ALEX R. MUNSON** |
| _____ | ) | |

### I.   **Defendant's statement of material facts**.

Plaintiff's discussion under this heading is really not one that addresses the

material facts of this case. Rather it is a preliminary argument preceding the basic

discussion which is found at plaintiff's memorandum, page 4. There are however

a couple of matters that require comment. The first of these is the assertion at

page 2 that the settlement agreement is silent as to who, if anyone, has a duty to

seek and obtain a sublessee of the property or an assignee of the lease. As will be

discussed below, the only reasonable reading of the lease is that it is the duty of the lessee, defendant Isoda to secure a qualified sublessee or assignee.

Defendant Isoda also asserts that there is no dispute that neither plaintiff nor defendant ever found a sublessee or a assignee for the lots. The implication in that statement is that defendant Isoda made some serious attempt to do so. As the evidence so far adduced in this case establishes, he did not make any serious attempt to do so. The so-called "concrete proposal" which has been asserted by Isoda in this proceeding is, of course, hearsay testimony. As such it is not admissible in this proceeding. Rule 56(e) FRCP; *U.S. v. Dibble*, 429 F.2d 598 (9th Cir. 1970). Without a sworn assertion by the party making the offer, we are not capable of knowing on the present record whether this so called offer is real or pure fiction.

Defendant Isoda next raises the issue of the failure to retain an appraiser. As pointed out in the statement of facts and opposition to defendant's motion, this is a non-issue at this state of the proceeding. If a willing and able buyer is secured, then the issue of an appraiser and the procedures to follow definitely do become a material issue of fact.

Defendant Isoda asserts that an undisputed fact is his clearing the property for a few years. That is in dispute based upon Mr. Guerrero's personal knowledge.

-2-

**II    Defendant Isoda has breached the lease.**

Defendant Isoda argues three issues in support of his motion for summary judgment. It will be addressed essentially in the order raised.

1. The settlement is silent as to the responsibility to obtain a sublessee or assignee.

As is acknowledged by defendant, the settlement agreement was incorporated into the lease document. See ¶¶5 and 16 of the lease. Where in the contract there is reference to another writing that is made for the purpose of making such writing part of the contract, that it is to be taken as a part of the contract as though its contest had been repeated in the contract. *Forge v. Smith*, 580 NW.2d 876 (Mich. 1998). Further, the breach of the settlement agreement is a breach of contract. *Rosario v. Camacho*, 2001 MP3, ¶95. Thus, any breach of the settlement agreement is automatically a breach of the lease.

The primary provision of the settlement agreement which must be addressed is the language contained in ¶4 of that agreement. After reciting the obligation of Guerrero to pay Isoda the sum of $350,000.00 for Isoda's rights to the two lots at issue, the agreement goes on to provide for the time frame for payment and what happens if the payment is not paid. The pertinent language reads as follows (Settlement Agreement @p.3).

> "Said payment of $350,000.00 to be made within
> ninety (90) days of the execution of this agreement. Should
> Guerrero fail to make the $350,000.00 payment to Isoda

DOUGLAS F. CUSHNIE, SAIPAN, CM 96950

within said ninety (90) days period, then Pete Guerrero will immediately enter into a fifty (55) year lease with Isoda to the Garapan properties.  <u>Isoda will then sublease or assign the lease to said Garapan properties, and upon this occurrence Isoda shall pay to Guerrero from the proceeds of said sublease or assignment of lease thirty and one third percent (33 1/3%) of said amount.</u>" (Emphasis Added).

As defendant has pointed out the $350,000.00 was not paid and the lease was in fact executed by plaintiff Guerrero in favor of defendant Isoda.  Thus Isoda as lessee of the property held a possessory right on those two lots for a period of fifty-five (55) years.  The argument of Isoda is that no one really knows whose obligation it is to sublease the property or assign the lease.  In a normal business situation the only person with the legal right to sublease the premises is the lessee/sublessor.  Certainly the owner has no such right because the owner is not the lessee and as such has no possessory right to the property.  Further, in any sort of a sublease situation there is no privity of contract between the owner and the sublessee.  The sole contract is between the owner and the lessee.  Next, who under the normal sequence of business-legal events has the right to assign the lease.  Obviously it is the holder of the lease.  The holder of the lease in the instant situation is Isoda.  The owner, Guerrero has no right to assign the lease.  All Guerrero has is a right of approval, and when one examines the remainder of the lease document this is a right of approval that cannot be unreasonably withheld. (Lease ¶16, 17).  The argument of Isoda simply ignores the legal rights and

-4-

DOUGLAS F. CUSHNIE, SAIPAN, CM 96950

obligations running between the owner and the lessee, ignores standard business practice and ignores the structure of the settlement.

The structure of this settlement, which is a part of the lease agreement provides for Isoda to have possessory control of the property as the lessee. With this possessory control he "will then sublease or assign the lease to said Garapan properties". The obligation to do so is subject to conditions. One, the lease must be assigned or the property sublet at appraised fair market value. The settlement agreement provides for standard procedure for selecting an appraiser. (Settlement, ¶4). Thus there is no mystery in that condition. Second condition is that Guerrero has a right of refusal of the proposed sublessee or assignee. The right of refusal, however, cannot be unreasonably withheld. (Lease, ¶¶16, 17). Not only may consent not be unreasonably withheld, but pursuant to ¶17 of the lease Guerrero must take action within thirty days after written request for approval by Isoda. If Guerrero does not act within that time approval is deemed automatic. It is thus apparent that the entire structure of the settlement and the lease within which it is incorporated follows a standard lessor/lessee relationship. The assertion by Isoda that essentially nobody knows who was suppose to do what is totally devoid of merit.

2. The parties do not agree upon an appraiser.

It may be simply said in dealing with commercial property that unless there

-5-

is a willing and able buyer available, the parties will not undertake the expense of

having the property appraised. It is submitted that Isoda has the conditions for

appraisal precisely backwards. Isoda argues that one should enter into an appraisal

situation prior to a potential buyer being secured. In the normal course of a real

estate market with offers being made over a period of time one wonders how many

appraisals will have to be undertaken all in anticipation of somebody arriving some

day and making a serious offer. In fact, the correct procedure appears to have

inadvertently slipped out at page 8 of Isoda's memorandum. In the second

paragraph Isoda recites that if a willing buyer presented himself independently or

through Guerrero's efforts, "and offered a price that triggered a good faith effort to

engage in the appraisal's process or a concurrence that the price was acceptable"

Isoda would have to assign or sublet. Thus even Isoda recognizes that as a

practical business person one is going to seek out the buyer and only then go to the

expense of receiving a formal appraisal.

Isoda does add in that same paragraph that he has a right to engage in his

own business on the premises without regard to plaintiff Guerrero. That is not

contemplated in the settlement agreement which forms an integral part of the lease.

The settlement agreement clearly provides that defendant Isoda will sublet or

assign the property upon his receiving the lease. There is no precise time frame

because the parties clearly recognized that there is no magical period within which

-6-

it will absolutely occur.  The critical issue here, however, is that businesslike efforts will be made to sublease the property or assign the lease.  That is what is required and that is what Isoda failed to do.

3.  The assignment portion of the lease does not require Isoda to assign or sublet under any circumstances.

The lease by incorporating into it the settlement agreement requires Isoda to sublease the property or assign the lease.  Why is this so?  It is so because the further consideration for this entire settlement, of which the lease is a part, was to provide Guerrero with further consideration for leasing these two lots.  The full consideration for this lease was not paid at the time the assignment.  The full consideration for this lease can only be paid at the time the property is sublet or the lease assigned.  That is clearly contemplated by the various trade offs contained within the settlement agreement which is incorporated into the lease.  For instance, the Guerrero Brothers assigned all of their interest in a company known as MTDC.  (Ex. B to Def.'s memo.).  MTDC was both a construction company but also primarily provided aggregate from its own quarry, a business that was highly profitable, all of which was assigned over to Isoda.  (Def. Ex. B; Aff. Guerrero@¶15).

Isoda argues that the law abhors a forfeiture.  *Cabrera v. Young*, 2001 MP19, ¶24.  While Guerrero does not quarrel with that academic proposition,

-7-

where a defendant fails to comply with provisions of the lease directly relating to

the continuing consideration which is due under the lease, then courts will not

hesitate to forfeit the lease. *Cabrera v. Young*, 2001 MP 19, ¶24. The

interpretation of the lease by Guerrero it is submitted is the only interpretation that

makes sense under the settlement agreement which was designed to resolve a bitter

intracorporate dispute. In order for the parties to come out reasonably equal it was

necessary to assign the lease or sublease the properties and convert the land to

cash with two-thirds of it going to Isoda.

### III. Isoda abandoned the lease property.

Isoda's main reliance in this situation is his letter to Guerrero stating that he

did not abandon the property. That is a conclusory statement and is belied by the

uncontradicted facts on the ground. These are set forth in plaintiff's statement of

facts at ¶4a thru l. Defendant asserts that abandonment requires the intent to

abandon and conduct by which the intent is carried into effect, citing *Turnway*

*Corp. v. Soffer*, 336 A.2d 871 (Pa. 1975). Turning to the *Soffer* case there is the

assertion in that case that to establish an abandonment there must be a finding as a

matter of <u>fact</u> that one, there was intent to abandon, and two, conduct by which the

intention was carried into effect. While the *Soffer* case was filed as an action in

equity for an injunction let us make use of the legal proposition cited. How will

we determine whether there was an intent to abandon or not. Clearly this is an

-8-

DOUGLAS F. CUSHNIE, SAIPAN, CM 96950

issue which a jury must determine.  To determine this issue the jury will look at

what Mr. Isoda did or did not do over the past thirteen years with respect to this

land.  Next, we examine the conduct by which the intention is carried into effect.

Once again, findings of fact must be made by a jury to determine how Isoda

effectuated this intent.  Examining this the jury will look at Isoda's total failure to

secure an assignee or sublessee, his total failure to keep the property clean, post

for rent signs, secure a marketing agent, or have any contact at all with prospective

sublessees or assignees for a period of some ten to twelve years, by his own

testimony.  The property was permitted to become overrun and a health hazard

which caused the government to begin taking action.  The property was

permitted to be used by other persons to the extent that a permanent building was

placed on the property by a neighbor.  These are the basic facts from which a jury

may draw has conclusion that the property was abandoned and through this same

conduct Isoda failed to secure a sublessee or assignee thereby completing the

consideration for this property in the first place.  After all, Isoda was to receive

two-thirds of whatever the consideration was for this later transaction.

Defendant cites *Smith v. Hegg*, 214 N.W.2d 789 (So.Dak. 1974).  The cite

is for the proposition that lack of physical occupancy does not mean the premises

are not in the possession of the lessee so long as the rent is paid.  Initially, it is

plaintiff's position that the full rent has not been paid, as has been discussed

-9-

above.  Second, the *Smith* case presented a factual situation wherein the assignees
paid rent, kept the keys and maintained control over the building although their
active business had been removed from the premises.  Further, they only lost
possession due to subterfuge by the defendant.  Thus the case facts do not support
the bold legal assertion for which it is cited.

Defendant has argued that the provisions of the settlement agreement and
the lease are repugnant and that his construction of them is the only sensible
construction.  (Br. @p.7, 8).  Guerrero submits that there is no repugnancy within
the lease or the lease as incorporating the settlement agreement.  Read as a
standard business transaction, which was designed to resolve a intracorporate
dispute over management and ownership it clearly effectuates the intent of the
parties.  The intent, as per the settlement agreement was to transfer all of the
corporate interest over to Isoda.  In return for this Isoda picked up certain
corporate obligations, the transfer and conversion of these two lots to cash being a
part of this resolution.

## CONCLUSION

The conduct of Isoda constituted not only abandonment of the physical
premises but for our purpose facts which constituted that abandonment establish
abandonment of Isoda's obligations under the lease to market the property and
secure a sublessee or assignee of the lease which he received as a part of the

-10-

settlement agreement.  The intent of the parties at the time this agreement was

entered into was to market the property.  The parties wanted cash as is evidenced

by the initial requirement that Guerrero pay Isoda $350,000.00.  Guerrero could

not do so and did not do so, hence transferred by lease, possession of these two

properties to Isoda.  It was then Isoda's obligation since he did not receive the

$350,000.00, to market the property as quickly as possible so that he would

receive his cash and Guerrero would receive his one-third.  It makes no sense to

view this arrangement in the light posed by Isoda.  The light is that Isoda can

simply sit on the property forever.  It could not have been and was not the intent of

the parties.  By failing to effectuate the intent through the obligations imposed

upon him, Isoda has breached the lease and thus his interest there should be

terminated.

DATED this 27th day of October, 2005.

RESPECTFULLY SUBMITTED,

DOUGLAS F. CUSHNIE
Attorney for Plaintiff

BY _Douglas F. Cushnie_
DOUGLAS F. CUSHNIE

-11-