**ORIGINAL**

Clerk
District Court

OCT 27 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

DOUGLAS F. CUSHNIE
P. O. BOX 949
SAIPAN, MP 96950
TELEPHONES: (670) 234/6843 • 234/6830
FAX: (670) 234/9723

Attorney for    **Plaintiff**

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **PEDRO R. DELEON GUERRERO,** ) | **CIVIL ACTION NO. 04-0033** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | **AFFIDAVIT OF** |
| **MASAYUKI ISODA aka** ) | **PEDRO R. DELEON GUERRERO** |
| **MIKE ISODA,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

Pedro R. Deleon Guerrrero, upon first being duly sworn deposes and states:

1. That I am the plaintiff in this case, have personal knowledge of the facts set forth below and if called upon to testify would testify accordingly.

2. That I am the owner in fee simple of Lots No. 001 D 51 and 001 D 52 located in Garapan, Saipan, CNMI.

3. That as a result of a settlement agreement entered into by and between myself, and my brother Herman R. Deleon Guerrero (Ex. B to Def.'s mtn. for S.J.) I leased to Isoda Lots 001 D 51 and 001 D 52, by a lease entered into March 17, 1992 a copy of which is attached as Exhibit A to defendant's motion for summary

judgment.

4. That over the term of the lease I would periodically check the property to see if there were any activity or development on the land, these checks being on average of approximately once every two months since the lease was entered into.

5. That during the period from 1992 to date I did not observe that the property was maintained or cleared or kept in a condition presentable to show prospective sublessees or assignees.

6. That during the period noted I did not observe any for rent signs or any other indications posted on the property that it was for sublease or assignment.

7. That during the last several years I observed that the property had become increasingly overgrown, with garbage thrown about and serving as a dump site for construction materials such as sand and aggregate.

8. That approximately one year ago I observed a neighbor on the south side of the property constructing and completing a permanent building on my land.

9. That on the 10th day of February, 2005 I received a letter from Juan Tagabuel, Director of Sanitation informing me of the unsanitary conditions on the property, a copy of said letter being attached hereto as Exhibit 1.

10. That on the 1st day of February, 2005 I received a letter from Joaquin D. Salas, Director of Coastal Resources advising me of a similar condition, a copy of said letter being attached hereto as Exhibit 2.

DOUGLAS F. CUSHNIE, SAIPAN, CM 96950

11. Attached are photos of the property taken by me in 2002 & 2004 which accurately show the condition of the property at those times.

12. On January 14, 2003 I received a letter from Benny K. Pangelinan of Coastal Resources Management requesting permission to permit a clean up team to enter the property and clean it, a copy of said letter being attached hereto as Exhibit 3.

13. That during the period from 1992, with the exception of the supposed $120,000.00 offer to sublease the property Mr. Isoda did not inform me of any offers, nor contacts with any individuals or firms who may be interested in subleasing the property or receiving an assignment of the lease.

14. No appraisal was done on the property since the lease was executed because Mr. Isoda presented no persons or firms interested in leasing the property thus conducting an appraisal would have been a total waste of time and money.

15. MTDC was a corporation owned by me, my brother & Isoda. It's purpose was primarily to operate a quarry, a business that was for several years quite profitable.

16. The loan Isoda speaks of in his affidavit was to pay off a mortgage on MTDC equipment. My brother & I transferred to Isoda all our interest in MTDC.

17. At the time of the settlement it was intended that all relations between the parties be terminated and the cleanest way to do so was by cashing me and my brother out of MTDC and paying Isoda for his interest in the property. When I

-3-

could not raise funds to pay Isoda for his property interest, the fall back position was to lease Isoda the property and he would then promptly and actively market it.

AND FURTHER your affiant sayeth not.

DATED this 27th day of October, 2005.

_____
PEDRO R. DELEON GUERRERO

SUBSCRIBED AND SWORN to before me this 27th day of October, 2005.

_____
NOTARY PUBLIC

LUCIA M. DELEON GUERRERO
NOTARY PUBLIC
Government of the Northern Mariana Islands
My Commission expires on the
5th day of FEBRUARY, 19 06

DOUGLAS F. CUSHNIE, SAIPAN, CM 96950

-4-




# Department of Public Health
## Division of Public Health
*Bureau of Environmental Health*

February 10, 2005

PEDRO R. GUERRERO
Property Owner
P. O. Box 500924
Saipan, MP 96950

Re: Referral of Vector Inspection

Dear Mr. Guerrero,

The Division of Public Health's Bureau of Environmental Health (BEH) has received a copy of CRM letter addressed to your attention in reference to unsanitary condition and vector harborage area in Garapan dated 01st February 2005.

Subsequent to CRM inspection, BEH inspectors re-visited the abundant premises (Lot # 001-D51 & 52) in Garapan on 8th February and found overgrown vegetation, littered debris and used cooking pots indicative that squatters used the abundant structure.

Additionally, in April 2001, BEH inspectors tried unsuccessfully to contact Mr. Masayuki Isoda or representative of Hamano Corporation (above-mentioned property lots known leaser) on behalf Garapan interagency collaborative effort to beautify and clean Garapan. The above-mentioned properties in Garapan, lot # 001 D 51 and 001 D 52 were found to be promoting harborage for vectors (insect, mosquito, rodents) to the immediate residential premises and the residences in violation of § (b) chapter 3 & 7.

Pursuant to Public Law 12-48 § 2123 (a) 12 and (b) 3&7, BEH office is mandated to inspect commercial and private premise to promote vector control, promote cleanness to exclude insects, rodents and other vectors from premise. Accordingly, § 2143 provides penalty and fines for none compliance to rectify the identified violation(s) cited in BEH premise inspection.

Thus, this is a written warning as owner of record for the above-mentioned properties in Garapan. Failure or none compliance to premise vector control violation can be subject to fine $500. for each subsequent inspection after your grace period for corrective action. Hence, you are given 2 weeks (date receipt of letter) grace period to take corrective measures to clean and rid the identified properties of all the vector control violations.

Should you have any questions or concerns, please contact Mr. David Cepeda in Navy Hill office at 664-4870/72.

Sincerely,

JOHN TAGABUEL
Environmental Health Officer

Cc   Acting Deputy Secretary for Public Health
     Director, CRM
     BEH file






**Commonwealth of the Northern Mariana Islands**

# Coastal Resources Management

P.O. Box 10007, 2nd Floor, Morgen Building
San Jose Saipan, MP 96950

**COASTAL RESOURCES MANAGEMENT**

Tels.: (670) 8300/14
Fax: (670) 664-8315

February 01, 2005

Mr. Pedro R. Guerrero
Owner of property fronting Ever Green Plaza, Garapan
P.O. Box 500924
Saipan, MP 96950

Subject: Litter at your abandoned property at Garapan fronting the Ever Green Plaza at Garapan.

Dear Mr. Guerrero:

Sometime in June 2004, a concern citizen wrote to our agency expressing concern about your property mentioned above people use at night to hang-out and litter the area. The concern citizen wanted to perform a clean up at your property because it was an eyesore and we responded that before they enter your property we advised them to seek your consent and we also advised that if they will perform any earthmoving work that they would have to seek and earthmoving and erosion control permit from the Division of Environmental Quality.

CRMO would like to inform you that a recent site visit was performed again to your property and looking from the street, the area is overgrown with vines, littered with trash, and you could see from the distance that the abandoned building is used as a hangout and trash are left behind. The government is working really hard to beautify the Garapan Hotel Street area and this property just contradicts that goal. CRMO do not have any jurisdiction to take any enforcement action to have this place cleaned up. However, we will forward this memo to both the Division of Environmental Quality and the Public Health, Sanitation Division and be informed that possible enforcement action may be initiated by these agencies to address this matter.

Exhibit 2

Should you have any questions or concerns regarding this memo, please do not hesitate to contact our office.

Sincerely,

Joaquin D. Salas
Director

Cc: Director, DEQ
  Director, Sanitation
  Secretary, CHC
  Acting Chief Enforcement Officer, CRMO




**Commonwealth of the Northern Mariana Islands**
# Coastal Resources Management
P.O. Box 10007, 2nd Floor, Morgen Building
San Jose Saipan, MP 96950

Tels.: (670) 8300/14
Fax: (670) 664-8315

January 14, 2003

Mr. Pedro R. Guerrero
(Paduna)
Saipan, MP 96950

Dear Mr. Guerrero:

The purpose of this letter is to secure your permission for the CRMO Environmental Interagency Cleanup Operation Team (EICOT) to enter and clean your undeveloped property in Garapan in order to make Garapan a beautiful and a safe place to walk around. These lots can be identified as numbers 001 D 51 and 001 D 52.

For your information, the Mayor of Saipan (member of EICOT) has been charged to clean up your property at no cost to you. Your allowing us to enter your property to clean will not only benefit the public or the visitors but to you as well as the owner of the lot.

By signing on the space provided below it will signify your concurrence for EICOT to clean your Garapan property.

Benny K. Pangelinan
Chairman, EICOT

CONCUR: _____  JAN. 22, 2003
         Pedro R. Guerrero            Date

Exhibit 3